666 F.2d 85
 SARAN INDUSTRIES, INC., Plaintiff-Appellee Cross-Appellant,
v.
MARATHON OIL COMPANY, Defendant-Appellant Cross-Appellee,
v.
GLIDDEN COATINGS & RESINS, DIVISION OF SCM CORPORATION,
Defendant-Appellee Cross-Appellant.
 No. 80-3022.
 United States Court of Appeals,
Fifth Circuit.
 Dec. 23, 1981.
Rehearing Denied Jan. 28, 1982.
 
 William S. Penick, New Orleans La., Ralph S. Hubbard, III, New Orleans La., for Marathon.
 Sam A. LeBlanc, Philip A. Franco, New Orleans La., for Saran Industries.
 Allen F. Campbell, Christopher Tompkins, Howard L. Murphy, New Orleans, La., for Glidden.
 Appeals from the United States District Court for the Eastern District of Louisiana.
 Before COLEMAN, REAVLEY and SAM D. JOHNSON, Circuit Judges.
 PER CURIAM:
 
 
 1
 In this action for the breach of a contract for the application of paint to an offshore platform there was a trial which ran along for over three weeks. At its conclusion the jury was presented with no less than nineteen interrogatories. The lawsuit had degenerated into a cyclone of claims and counterclaims, factual and legal, some of them outside the scope of the pleadings and the pretrial order. The way things turned out, the jury awarded Saran damages against Marathon in the sum of $248,200 on a contract which had called for a total of $207,000, on which all but $41,645 had been paid prior to the filing of the lawsuit. The parties, including those yet to be mentioned, have appealed, asking this Court to sort and appraise the fall-out from the storm. An explanation of how an unpaid balance of $41,645 turned into a verdict for $248,200 presents an unusual story.
 
 The Pretrial Order
 
 2
 We think the best thing to do is to state the case as the parties stated it for themselves in the pretrial order:
 
 
 3
 A brief summary of the material facts claimed is as follows:
 
 
 4
 A. Plaintiff, Saran Industries, Inc.: On or about October 1, 1976, Saran Industries, Inc., entered into a written contract with Marathon Oil Company whereby it agreed to paint an offshore production platform in the Gulf of Mexico. The contract was later amended to enlarge the original job. Under the contract, Marathon Oil Company was to supply the paint and perform certain other obligations. Under the agreement, Saran allowed Marathon 36 crew hours of delay for every 30-day period caused by Marathon but for any delays beyond that amount, Marathon was to be penalized $200 per hour. Because Marathon supplied defective paint, incompetent inspectors, interfered with the Saran painters, spilled oil in painting areas, supplied improper blasting sand, gave inadequate and/or improper instructions, and interfered in other ways, Saran was delayed approximately 2138 hours above the 36 crew hours per 30 days allowed. Saran seeks $427,600 in delay damages. Additionally, the balance of the contract price of $41,645.00 has not been paid and there was $15,819.00 in experts and other expenses incurred resulting in damages to Saran.
 
 
 5
 Saran has also filed a claim against Glidden-Durkee, Division of SCM Corporation. Glidden was the manufacturer and vendor of the paint sold to Marathon for use on the platform. Saran was the beneficiary of this contract and of the express and/or implied warranty that the paint was fit for the purpose intended. The paint was not fit for the purpose intended. Additionally, when Glidden sold the paint to Marathon, it knew the purpose intended for the paint, the agreed upon method of application, and that Saran would be the applicator. It also knew or should have known that the paint was defective and could not be applied with airless spray equipment. Because this paint was sold when the manufacturers knew it was not fit for its intended application or purpose, Glidden was in bad faith and/or intended to defraud Saran. Therefore, Saran demands $760,512.19 in damages from Glidden plus attorneys' fees. Saran also claims this amount from Marathon as a supplier of the paint.
 
 
 6
 Marathon alleges that Saran is liable to it in damages for certain defective work which had to be repaired. Saran answers that this was due to Marathon's own actions or to the defective Glidden paint.
 
 
 7
 B. Defendant: Marathon Oil Company denies that the penalty provision in its contract with Saran Industries refers to man-hours instead of crew hours and further denies that Saran Industries, Inc., suffered the number of hours of delay that are being claimed. It is further contended that any delays in the work caused by Marathon Oil Company were relatively insignificant in nature and did not exceed the number of hours allowed without penalty in the subject contract. The bulk of the delays claimed by Saran Industries was caused by the plaintiff's inexperience, fault, and/or method of applying the paint, or alternatively, by defects or deficiencies in the paint itself, which was supplied by SCM Corporation. In the latter event, Marathon Oil Company denies any responsibility for the condition or formulation of the paint and claims a right of indemnity over against SCM Corporation for any penalties imposed on Marathon Oil Company because of delays caused by the paint itself. Marathon Oil Company also denies any responsibility under the contract for delays caused by weather.
 
 
 8
 Saran Industries, Inc., exceeded by 27 days the time specified in the contract for completion of the work and is therefore obligated to Marathon Oil Company for penalties in the amount of $13,500 under the terms of the contract. In addition, Marathon Oil Company is entitled to recover from plaintiff the sum of $60,000 for corrective work performed on the platform as the result of improper workmanship by the plaintiff. If it is established in court that the subject delays in the work and the subsequent corrective work resulted from defects or deficiencies in the paint supplied by SCM Corporation, Marathon Oil Company is entitled to indemnity to the extent of any recovery by plaintiff as well as the cost of said corrective work.
 
 
 9
 C. Defendant: SCM Corporation denies that the paint that it furnished was in any way defective or that it or its products caused any delay in the job in question; it denies any defects or deficiencies in any specifications and/or instructions supplied by it; denies that the paint was not fit; denies that it had knowledge of any defects; denies that it was in bad faith or that it acted with intent to defraud and denies any liability for indemnity or contribution to any other party hereto. SCM Corporation further contends that the alleged delays in the job were caused by things other than the paint supplied by SCM Corporation, among others, such things being the ineptitude of the painters and improper methods of application utilized by the painter and improper preparation for the paint job.
 
 
 10
 A comprehensive statement of all uncontested material facts:
 
 
 11
 1. Saran Industries, Inc., and Marathon Oil Company entered into a written contract for the painting of Marathon's East Cameron Block 321, production platform "A". The original contract was signed on or about October 1, 1976, for a consideration of $137,000; it was amended on or about December 6, 1976, to enlarge the job and the consideration was increased to $207,000.
 
 
 12
 The single listing of the contested issues of fact are:
 
 
 13
 1. The actual number of hours of delay suffered by plaintiff.
 
 
 14
 2. The correct interpretation of the penalty and other provisions in the subject contracts.
 
 
 15
 3. The cause and extent of the aforesaid corrective work.
 
 
 16
 4. Causes of delays in plaintiff's completion of the job.
 
 
 17
 5. Whether or not the paint was defective.
 
 
 18
 6. Whether or not improper application was employed by the painter.
 
 
 19
 7. Whether or not the platform was properly prepared to receive the paint.
 
 
 20
 8. Whether or not the crew employed by the painter was competent.
 
 
 21
 A single listing of the contested issues of law are:
 
 
 22
 1. The correct interpretation of various contract provisions.
 
 
 23
 2. Marathon's responsibility for defective paint.
 
 
 24
 3. Marathon's responsibility for the actions of the paint inspectors or representatives of SCM Corporation.
 
 
 25
 4. Marathon's responsibility for weather delays.
 
 
 26
 5. Marathon's right of indemnity against SCM Corporation.
 
 
 27
 6. All questions of law implicit in the facts.
 
 
 28
 7. Whether plaintiff has stated a cause of action against cross-defendant.
 
 
 29
 8. Prescription defense of SCM as to Saran's cross claim.
 
 
 30
 * Marathon-Saran
 
 
 31
 As between Saran and Marathon the jury found that the contract provided for $200 PER CREW HOUR for delays caused by Marathon in excess of 36 for each 30 days and that there had been 278 hours of such delay ($55,600).
 
 
 32
 It further found that the paint purchased from Glidden by Marathon and furnished Saran was defective and that this caused 60 hours of the delay and that Marathon knew or should have known that the paint was defective.
 
 
 33
 It further found that Saran had exceeded its contract time by 25 days ($12,500).
 
 
 34
 We affirm these findings and so much of the judgment of the District Court as was appropriately entered on those findings.
 
 
 35
 The reversible difficulty in this case is to be found in Jury Interrogatories Numbered 6 and 7, the answers thereto, and the judgment entered thereon:
 
 
 36
 "Did Marathon breach the contract with Saran in such a way as to cause Saran damages which did not result from mere delay in completion of the project? "
 
 
 37
 Answer: "Yes".
 
 
 38
 "What amount, if any, excluding any award for attorney's fees, will reasonably compensate Saran for the damages it incurred due to Marathon's breach? "
 
 
 39
 Answer: "$192,600."
 
 
 40
 Initially, Saran argues on appeal that it was entitled to recover $140,000 from Marathon as damages for "lost profits on the Main Pass job caused by Marathon's breach of the East Cameron 321 Contract" and that the jury awarded all or part of this element of damage. We find this argument to be wholly untenable. In the first place, no contract was ever made and entered into between Marathon and Saran for the execution of the Main Pass job. Indeed, the job was never done. There was no contract to be breached.
 
 
 41
 On the same rationale, we reject Saran's argument that in the absence of a contract it is nevertheless entitled to recover because the East Cameron 321 disagreement motivated Marathon not to award it a contract on Main Pass. The inescapable answer to this contention is that Marathon was under no obligation to award a contract to Saran and could withhold such a contract for any reason satisfactory to it, or for no reason at all.
 
 
 42
 As a result, $140,000 must be subtracted from the jury's award of $192,600. This leaves a difference of $52,600. Of this amount, $41,645 may be attributed to the amount remaining unpaid under the terms of the written contract. This leaves a total of $10,955, which reasonably may be inferred to be the amount the jury determined constituted the "other costs" claimed by Saran.
 
 
 43
 Accordingly, the total amount due Saran from Marathon is $55,600 delay damages plus $41,645 for damages remaining unpaid under the terms of the written contract plus $10,955 other costs. The total due is $108,200. Of course, $12,500 ultimately will have to be subtracted from this amount in accordance with Part IV of the district court's judgment.
 
 
 44
 Upon remand, the district court will amend its judgment accordingly.
 
 II
 Marathon-Glidden
 
 45
 Glidden appeals Marathon's judgment against it, by way of indemnity, for $30,000.
 
 
 46
 In various responses to multiple interrogatories the jury found that the paint supplied for the platform job by SCM Corporation (Glidden) was "defective"-wherein and how, or for what reason, the jury does not say and was not asked to say. The jury further found that 60 hours of the 278 hours delay caused by Marathon (which had purchased and supplied the paint) was proximately caused by the defective paint. At $200 per hour this would amount to $12,000. The jury further found that while Marathon knew, or should have known, that the paint was defective Marathon was entitled to judgment against Glidden in the sum of $6,000 for the cost of repainting part of its platform. The judgment against Glidden should be modified to award $18,000, the sum of these items.
 
 
 47
 On appeal, Glidden does not challenge the jury's factual findings. Rather, given the findings, it argues that as a matter of law it had no liability. We have examined these contentions and find them to be without merit.
 
 III
 Saran-Glidden
 
 48
 Saran claims Glidden is liable to it in two ways. First, Saran claims Glidden is liable to it in damages for providing defective paint. Second, Saran argues the amount of attorney's fees awarded to it and against Glidden should be increased. However, this Court finds that for Saran to recover it must establish that it was a "buyer" of the paint. Saran is unable to establish that it was a buyer as contemplated by Louisiana law. Accordingly, Saran was entitled to no damages from Glidden resulting because of defective paint. In addition, this Court reverses the attorney's fees award granted to Saran and against Glidden in Part II of the district court's judgment.
 
 
 49
 This case presented disputes of a purely factual nature. There is no dispute that a written contract was made; the compensation to be paid for applying the paint was specifically stated; and the jury found that the paint was defective. Beset though it was by a wilderness of clashing contentions, in a trial which ran on for nearly four weeks after counsel had said at pretrial that five days would be enough, the jury found the facts as to delays and other factual features of the case. Reconciling the answers to the numerous interrogatories, which we have a duty to do when it can be done on a reasonable basis, we are convinced that we should affirm all findings, or the portions thereof, which are supported by competent proof. This means that we affirm on everything but the Main Pass item which got dragged into the case and the necessary reduction in the award in favor of Marathon as against Glidden.
 
 
 50
 All parties will pay their own costs in this appeal.
 
 
 51
 AFFIRMED IN PART, and IN PART REVERSED AND REMANDED for the entry of a final judgment in accordance herewith.